UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL JACE,<br>Plaintiff,<br>v.<br>C. REYNOSO, et al,<br>Defendants. | Case No. 1:26-cv-04412-EPG (PC)<br><br>ORDER DIRECTING CLERK OF COURT TO REVISE DOCKET<br><br>FINDINGS AND RECOMMENDATIONS THAT THIS CASE PROCEED ONLY ON PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM AGAINST DEFENDANT REYNOSO<br><br>(ECF No. 13)<br><br>OBJECTIONS, IF ANY, DUE WITHIN THIRTY DAYS |

Plaintiff Michael Jace is proceeding *pro se* in this civil rights action filed pursuant to 42 U.S.C. § 1983.[1] Plaintiff filed the complaint commencing this action on May 28, 2026.[2] (ECF No. 1). On August 5, 2026, the Court screened Plaintiff's complaint against eight defendants and found that it failed to state any cognizable claims, in part because it consisted largely of a lengthy account of unrelated disputes regarding various rules violations reports ("RVRs") he received over two years filed by multiple correctional officers over many issues. (ECF No. 10). The Court provided Plaintiff with leave to file a first amended complaint or to notify the Court that he wanted to stand on his initial complaint. (*Id.*).

[1] Plaintiff paid the filing fee on June 22, 2026.
[2] This case was transferred from the Central District of California on June 8, 2026. (ECF No. 5)

Plaintiff filed a first amended complaint on September 17, 2026, which is before the Court for screening. (ECF No. 13). Upon review, the Court concludes that Plaintiff's first amended complaint should proceed past screening only on Plaintiff's claim that Defendant Reynoso retaliated against him by filing a false RVR in violation of the First Amendment.

## I. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking "redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). The Court must dismiss a complaint, or a portion of it, if the prisoner has raised claims that are frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

## II. INITIAL COMPLAINT AND SCREENING ORDER[3]

Plaintiff filed his initial complaint on May 28, 2026, concerning events that occurred at Corcoran State Prison ("CSP") in Corcoran, California. (ECF No. 1). Plaintiff named eight CSP employees as defendants, including C. Reynoso, correctional officer; R. Ruiz, Associate Warden and reviewing authority; Lt. Bresno, Lieutenant; M. Curnel, correctional officer; V. Duffy, correctional officer; A. Cid, Sergeant; J. Gonzalez, correctional officer; and J. Barrios, Lieutenant. (ECF No. 1 at 3-5).

In his lengthy complaint, Plaintiff discussed a chronology of RVRs he received over several years related to different issues. Plaintiff described in detail why he believed he was innocent of each RVR and why the institution failed to adhere to their own policies. Plaintiff then alleged that eight defendants either drafted or approved RVRs from 2024 through 2026 out of retaliation for filing various grievances and lawsuits in violation of his First Amendment rights.

\\\

[3] For readability, minor alterations, like omitting capitalization, have been made throughout to some of Plaintiff's quotations without indicating each change.

The Court screened Plaintiff's complaint on August 5, 2026 and concluded that he failed to state any cognizable claims. (ECF No. 10 at 7). The Court found that Plaintiff's complaint consisted of a long chronological narrative of many unrelated RVRS that have been filed against him over two years by four correctional officers, two lieutenants, and a sergeant regarding various issues, and, moreover, did not specifically state which action was done in retaliation and the bases for believing so. (*Id.* at 4). Accordingly, the Court found that Plaintiff failed to comply with Rule 8's requirement of a short and plain statement of the claim. (*Id.* at 4).

The Court also found that the initial complaint did not allege that any defendant said anything indicating that the RVRs were filed because Plaintiff engaged in First Amendment conduct, noting that Plaintiff did not specifically tie the filing of RVRs with any specific litigation. (*Id.* at 5). Therefore, the Court concluded that Plaintiff failed to allege facts showing a nexus between the RVRs and any exercise of his First Amendment rights. (*Id.*).

The Court found that Plaintiff's claims were also subject to dismissal under *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) to the extent they sought damages based on claims that would necessarily imply the invalidity of guilty findings for various RVRs. (*Id.* at 5-6).

Finally, the Court concluded that Plaintiff's initial complaint violated Rules 18 and 20 of the Federal Rules of Civil Procedure because Plaintiff improperly included claims against different defendants based on different underlying conduct over a two-year time period. (*Id.* at 7). Accordingly, the Court found that "Plaintiff's claims against different defendants for different RVR conduct cannot be asserted in one lawsuit." (*Id.*).

The Court provided Plaintiff with the standards for potentially relevant claims and gave Plaintiff leave to amend his complaint. (*Id.* at 3-8).

## III. SUMMARY OF PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff filed his first amended complaint on September 17, 2026. (ECF No. 13). Plaintiff again alleges that the events at issue occurred at CSP. (*Id.* at 3-4). In his amended complaint, Plaintiff named seven CSP employees as defendants, including C. Reynoso, correctional officer; Bresno, Lieutenant; R. Ruiz, Associate Warden; M. Curnel, correctional

officer; V. Duffy, correctional officer; A. Cid, Sergeant; and J. Gonzalez, correctional officer; and J. Barrios, Lieutenant.[4] (ECF No. 1 at 3-5, 19).

Plaintiff again alleges that he received various RVRs for various reasons over two years, which were retaliatory for filing past grievances against sometimes unidentified correctional officers at CSP. (*Id.* at 4-19). Plaintiff alleges the following:

In Claim 1, Plaintiff asserts that "[p]rior to June 12, 2024, Plaintiff overheard Reynoso refer to him as 'the one filing all those grievances and lawsuits and even crying to the Department of Justice.'" (*Id.* at 4-5). Then, on June 12, 2024, Reynoso asked four other inmates, which all had cells with lower bunks available, if they would accept a cellmate. (*Id.* at 4). They refused. Reynoso then asked Plaintiff if he wanted a cellmate, and Plaintiff also refused. (*Id.*). Defendant Reynoso then issued an RVR against Plaintiff because he refused to accept a cellmate but did not issue an RVR against any other inmate who previously said no to a cellmate. (*Id.* at 4-5).

Because Defendant Reynoso only issued an RVR to Plaintiff and not others who refused a cellmate and because the Office of Appeals directed CSP to open an investigation about a confidential memorandum, Plaintiff "believes Reynoso took exception to Plaintiff drawing negative attention to Corcoran…and Reynoso took exception to not just falling in line [but] using the grievance procedure and litigation to defend himself…." (*Id.* at 5).

In Claim 2, Plaintiff alleges that on July 14, 2024, Defendant Bresno conducted an interview to investigate Plaintiff's grievance against Defendant Reynoso. (*Id.* at 5). Defendant Ruiz, serving as reviewing authority, unnecessarily appointed Bresno to conduct an interview when Defendant Reynoso's body camera could definitively prove or disprove Plaintiff's allegations. (*Id.*).

Plaintiff alleges that Defendants Bresno and Ruiz conspired to arrange an interview with Plaintiff as an attempt to avoid the body camera footage that Plaintiff requested to be used.

---

[4] While Plaintiff asserts the same claims from his initial complaint, Plaintiff does not name or re-assert his claims against Defendant Barrios in his amended complaint. (ECF No. 13 at 1, 3-4).

Plaintiff alleges this was an attempt to deceive the Office of Appeals, the Office of Inspector General, and the Department of Justice after Plaintiff filed complaints against CSP. (*Id.*). Plaintiff alleges that Defendants Bresno and Ruiz "conspired to deprive Plaintiff of his Frist Amendment rights [because] the interview could not reasonably advance a legitimate correctional goal because it was not necessary." (*Id.* at 8).

Plaintiff notes that, on November 5, 2024, the Office of Appeals found that Defendant Reynoso's "rules violation was warranted" but granted Plaintiff's grievance appeal and returned the matter to the investigative level. (*Id.* at 20-21). The Office of Appeals found that the investigative authority had "overlooked" Plaintiff's allegation about a false confidential memorandum being placed in his file after filing a lawsuit. (*Id.*). The Office of Appeals directed CSP to open a new grievance tracking system log number for review and directed a review to "collect sufficient information to support or negate if any confidential memorandum impacted or influenced staff, in order to discredit [Plaintiff.]" (*Id.* at 21).

On September 18, 2025, the Office of Appeals again directed CSP to open a grievance log number and investigate whether a confidential memorandum impacted or influenced staff against Plaintiff. (*Id.* at 22). Plaintiff alleges that Defendants Bresno and Ruiz have not complied with the order of the Office of Appeals to investigate Plaintiff's allegation of a confidential memorandum. (*Id.*).

In Claim 3, Plaintiff alleges Defendant Curnel issued an RVR at some identified time because Plaintiff had recently filed a grievance against his "friend and co-worker C.O. Reynoso." (*Id.* at 9). Defendant Curnel exercised his discretion to reassign a newly arriving inmate to Plaintiff's cell. (*Id.*). Other cells had bunks available, and Plaintiff had a grievance appeal pending about the manner CSP was assigning cellmates to him. (*Id.*). Defendant Curnel issued an RVR to Plaintiff for refusing a cellmate as a "pretext" to punish Plaintiff for having written a grievance against Defendant Reynoso. (*Id.* at 9-10). "That RVR was issued to coerce Plaintiff into accepting a cellie, thereby thwarting the grievance procedure" which "would have been moot." (*Id.* at 10). Plaintiff states that the RVR was dismissed "primarily because Curnel lied." (*Id.* at 11-12).

In Claim 4, Plaintiff alleges that, on February 18, 2025, eight months after Defendant Reynoso's RVR, Defendant Duffy drew up an "arbitrary list" of inmates who had a bunk available in their cell. (*Id.* at 11). Plaintiff was third on the list. (*Id.*).

Defendant Duffy issued Plaintiff an RVR, presumably related to Plaintiff being asked about a cellmate. (*Id.* at 12). Plaintiff believes Duffy was aware that Defendant Curnel's RVR was dismissed, and Defendant Duffy "then issued a retaliatory RVR, because he was pissed Plaintiff filed a grievance against his partner where Curnel's dishonesty was documented." (*Id.*).

In Claim 5, Plaintiff alleges that Defendant Duffy issued Plaintiff an RVR for not taking a cellmate on April 2, 2025. (*Id.* at 13). With this additional RVR, Plaintiff would be placed on C-status, with limited hours of yard. (*Id.*). Duffy was angry that Plaintiff "had just written him up in addition to writing up his partner," Defendant Curnel. (*Id.* at 14). Defendant Duffy said "aloud before he approached Plaintiff, 'I'm tired of this shit!'" (*Id.*). Defendant Duffy could have assigned the newly arriving inmate to other cells that only had one occupant. Instead, Duffy retaliated against Plaintiff for submitting grievances against him and Curnel and assigned the new arrival to Plaintiff's cell, knowing Plaintiff would refuse and Duffy could then issue an RVR. (*Id.*).

In Claim 6, Plaintiff alleges Defendant Ruiz violated his First Amendment right to file prison grievances and pursue civil rights litigation because Ruiz served as the initial reviewing authority for Plaintiff's grievance against Defendant Reynoso and affirmed Reynoso's RVR against the Plaintiff. (*Id.* at 15). Plaintiff alleges that:

> …[I]n the affirmation of the RVR, he violated Plaintiff's First Amendment right to file prison litigation and pursue civil rights litigation. R. Ruiz should have known that the SHO refusing to view the body camera footage Plaintiff requested of C.O. Reynoso going to multiple cells before approaching Plaintiff '[was] a deprivation' of Plaintiff's First Amendment right that contradicted case law…The footage was needed to prove Reynoso's RVR was invalid…And the refusal was not due to security concerns, it was simply because the SHO said it was irrelevant…R. Ruiz knew or should have known this but he affirmed the violation anyway….

(*Id.* (internal citations omitted)).

Plaintiff further alleges that Defendant Ruiz has not followed the Office of Appeals' directive to investigate whether a confidential memorandum exists against Plaintiff in retaliation for filing prior grievances. As such, Plaintiff alleges that Defendant Ruiz has violated his First Amendment rights. (*Id.*).

In Claim 7, Plaintiff alleges that, on June 15, 2025, Plaintiff was on C-status and getting water. (*Id.* at 17). Defendant Gonzalez issued a "meritless RVR because Plaintiff had filed a grievance against Gonzalez days prior." (*Id.*). Defendant Gonzalez "was also upset because Plaintiff had added his friend and supervisor Sgt. A. Cid to the civil rights litigation Plaintiff has against Corcoran (*Jace v. Lirones, et al.*, 1:22-cv-00419-KES-CDB)." Defendant Gonzalez issued an RVR out of retaliation. (*Id.* at 18).

Defendant Cid approved Gonzalez's RVR out of retaliation because, two months earlier, Plaintiff had added him as a defendant to another pending civil rights lawsuit. (*Id.*).

For each of his claims, Plaintiff is seeking punitive damages of $30,000 and "exemplary damages" of $15,000 against each defendant. (*Id.* at 7).

## IV. ANALYSIS OF PLAINTIFF'S FIRST AMENDED COMPLAINT

### A. Section 1983

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or

federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. County of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark County Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

**B. Retaliation in Violation of the First Amendment**

Plaintiff alleges that Defendants each violated his rights by filing or approving RVRs that were false, were not filed against other inmates based on similar circumstances or were based on improper procedure. Plaintiff repeatedly alleges that Defendants had no penological goal, and as a result, must have issued RVRs for retaliatory reasons.

There are five basic elements to a First Amendment retaliation claim: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

"Evidence of [] motive may include: (1) proximity in time between the protected conduct and the alleged retaliation; (2) defendant's expressed opposition to the protected conduct; and (3) other evidence showing that defendant's reasons for the challenged action were false or pretextual." *Barth v. Montejo*, No. 2:19-CV-1874 DB P, 2020 WL 73407, at *2 (E.D. Cal. Jan. 7, 2020). However, "[]even if plaintiff has established temporal proximity, retaliation is not established simply by showing adverse activity by defendant after protected speech; rather, plaintiff must show a nexus between the two." *Smith v. Cruzen*, No. 14-CV-04791 LHK (PR), 2017 WL 4865565, at *12 (N.D. Cal. Oct. 26, 2017), aff'd, 735 F. App'x 434 (9th Cir. 2018) (citing *Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (retaliation claim cannot rest on the logical fallacy of post hoc, ergo propter hoc, i.e., "after this, therefore because of this").).

Here, Plaintiff alleges that he heard Defendant Reynoso talk about the grievances and lawsuits he was filing against CSP and its correctional officers. (ECF No. 13 at 4-5). Plaintiff also alleges that Defendant Reynoso learned that the Office of Appeals directed CSP to open an investigation about Plaintiff's allegations that a confidential memorandum had been placed in his file out of retaliation for filing grievances. Thereafter, on June 12, 2024, Defendant Reynoso selectively issued an RVR against Plaintiff for refusing a cellmate out of retaliation. (*Id.* at 5).

Based on the allegations in Plaintiff's amended complaint, the Court finds that, for purposes of screening only, Plaintiff sufficiently alleges that Defendant Reynoso retaliated against him for engaging in protected grievance conduct and filing civil rights lawsuits in violation of Plaintiff's First Amendment rights.[5]

### C. Favorable Termination Rule: *Heck v. Humphrey*

Plaintiff's claims against remaining Defendants Ruiz, Bresno, Curnel, Duffy, Cid, and Gonzalez are subject to dismissal to the extent they seek damages based on claims that would

---

[5] However, Plaintiff fails to state a cognizable claim against the remaining Defendants Ruiz, Bresno, Curnel, Duffy, Cid, and Gonzalez as discussed below.

necessarily imply the invalidity of guilty findings for various RVRs.

In *Heck v. Humphrey*, the Supreme Court held that a state prisoner cannot use §1983 to seek damages attributable to his allegedly unconstitutional conviction. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). The Supreme Court reasoned that such a suit in truth mounts a “collateral attack” on the validity of the conviction and thus intrudes on the habeas statute’s domain. *Id.* at 485. Hence the so-called *Heck* bar on “§1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement.” *Id*. at 486. “[W]hen a state prisoner seeks damages in a §1983 suit,” the Court went on, “the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence.” *Id*. at 487.

This “favorable termination rule” preserves the rule that federal challenges, which, if successful, would necessarily imply the invalidity of confinement or its duration, must be brought by way of petition for writ of habeas corpus, after exhausting appropriate avenues of relief. *Muhammad v. Close*, 540 U.S. 749, 750-751 (2004).

*Heck* also applies to § 1983 claims arising from prison disciplinary proceedings that resulted in a sanction that affects a prisoner's term of confinement, such as the loss of good time credits. *Edwards v. Balisok*, 520 U.S. 641, 643–49 (1997). A prisoner's challenge to a prison disciplinary proceeding is barred by *Heck* if judgment in his favor would necessarily imply the invalidity of the resulting loss of good time credits. *Id.* at 646. Thus, “a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration.” *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005); *see Edwards*, 520 U.S. at 643–49 (holding that plaintiff's claim for declaratory relief and money damages against a prison official was barred by *Heck* because the plaintiff's “allegations of deceit and bias on the part of the decisionmaker ... necessarily impl[ied] the invalidity of the punishment imposed[.]”)."

Here, Plaintiff’s allegations against Defendants Ruiz, Bresno, Curnel, Duffy, Cid, and

Gonzalez appear to concern RVRs where Plaintiff was found guilty and may have lost good time credits. To the extent success in this case would be inconsistent with a finding against him, which would result in a change to the duration of his confinement, it would be barred by the *Heck* bar.

**D. Rules 18 and 20**

Plaintiff's amended complaint also violates the Federal Rules of Civil Procedure because it asserts several unrelated claims against unrelated defendants.

Under Federal Rule of Civil Procedure 20(a)(2), multiple parties may be joined in one action as defendants if:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the action.

Thus, a plaintiff may not bring unrelated claims against unrelated parties in a single action. Fed. R. Civ. P. 18(a), 20(a)(2); *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). A plaintiff may bring a claim against multiple defendants so long as (1) the claim arises out of the same transaction or occurrence, or series of transactions and occurrences, and (2) there are commons questions of law or fact. Fed. R. Civ. P. 20(a)(2); *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997); *Desert Empire Bank v. Insurance Co. of North America*, 623 F.3d 1371, 1375 (9th Cir. 1980).

As in his initial complaint, Plaintiff improperly includes claims against different defendants based on different underlying conduct over a two-year time period. Thus, these claims are unrelated and cannot all be brought in this suit. As discussed in the Court's Screening Order (ECF No. 10), the fact that Plaintiff's claims against Defendants Ruiz, Bresno, Curnel, Duffy, Cid, and Gonzalez all concern retaliation does not make them sufficiently related for litigation purposes. Plaintiff's attempt to bring them altogether in a single action is an improper attempt to avoid the filing fee.

\\\

Accordingly, as Plaintiff's amended complaint fails to comply with Rules 18 and 20, the Court will recommend that Plaintiff's claims against Defendants Ruiz, Bresno, Curnel, Duffy, Cid, and Gonzalez, which arose after Defendant Reynoso issued the RVR on June 12, 2024, be dismissed without prejudice.[6]

**V. CONCLUSION, ORDER, AND RECOMMENDATIONS**

The Court has screened Plaintiff's first amended complaint and finds that Plaintiff's claim for retaliation in violation of the First Amendment against Defendant C. Reynoso should proceed past screening. The Court will also recommend that all other claims and defendants be dismissed without prejudice.

The Court will not recommend that further leave to amend be granted. In the Court's prior Screening Order (ECF No. 10), the Court identified deficiencies in Plaintiff's complaint, provided Plaintiff with relevant legal standards, and provided an opportunity to amend his complaint. Yet, Plaintiff re-asserted the same unrelated claims against Defendants Ruiz, Bresno, Curnel, Duffy, Cid, and Gonzalez.

Accordingly, IT IS ORDERED as follows:

1. The Clerk of Court shall revise the docket to terminate Defendant Barrios as a defendant.

Furthermore, IT IS RECOMMENDED that:

1. This case proceed on Plaintiff's First Amendment claim against Defendant Reynoso for retaliation; and
2. Plaintiff's First Amendment retaliation claims against Defendants Ruiz, Bresno, Curnel, Duffy, Cid, and Gonzalez be dismissed without prejudice to Plaintiff filing such claims in separate actions.

---

[6] The unrelated claims against Defendants Ruiz, Bresno, Curnel, Duffy, Cid, and Gonzalez involve conduct that occurred in 2024 and 2025. Considering these recent events and the fact that Plaintiff's lawsuit was newly filed on May 28, 2026, there is no concern that Plaintiff's claims may be time barred by the statute of limitations. Plaintiff still has time to file separate lawsuits and pursue the unrelated claims.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." **Objections, if any, shall not exceed fifteen (15) pages. Any pages filed in excess of the 15-page limit may not be considered. Exhibits shall not be filed with objections, but they may be referenced by the document and page number. No new exhibits may be filed with objections.** The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **October 20, 2026**

/s/ Eric P. Grosjean
UNITED STATES MAGISTRATE JUDGE